ELI J. PATTEN     (ID No. 11219)
CROWLEY FLECK PLLP
490 North 31st Street, Suite 500
P.O. Box 2529
Billings, MT 59103-2529
Telephone: (406) 252-3441
E-Mail: epatten@crowleyfleck.com

RYAN A. ANDERSEN   (Pro Hac Vice Admission Requested)
ANDERSEN LAW FIRM, LTD.
101 Convention Center Dr., Ste. 600
Las Vegas, NV 89109
Telephone: (702) 522-1992
E-Mail: ryan@vegaslawfirm.legal

Attorneys for First 100, LLC and
1st One Hundred Holdings, LLC

RECEIVED JUL 02 2018
CLERK, U.S. DISTRICT COURT
DISTRICT OF MONTANA
BILLINGS, MONTANA

FILED JUL 0 2 2018
Clerk, U S District Court
District Of Montana
Billings

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| In re:<br><br>RAYMOND NGAN,<br><br>Debtor. | Case No.: 18-MJ-00028-BLG-TJC<br><br>**DECLARATION OF RYAN A. ANDERSEN IN SUPPORT OF BRIEF CONCERNING JULY 2, 2018 HEARING** |

I, Ryan A. Andersen, Esq., declare as follows:

1. I am over the age of 18 and mentally competent.

2. I make this declaration in support of the Brief Concerning July 2, 2018

1

Hearing ("Brief") filed by First 100, LLC; 1st One Hundred Holdings, LLC; and Battle Born Investments Company, LLC (together, "Movants"). Terms used by not defined herein are used as defined in the Motion.

3. I am counsel of record for the Movants. I have personal knowledge of the facts stated herein, and I could and would testify to the same if called upon to do so.

4. As of July 31, 2017, the day that Ngan filed the Bankruptcy Case ("Petition Date"), Ngan owed approximately $2.23 billion to Creditors ("Debt"), such Debt attributable to a final judgment ("Judgment") entered on March 28, 2017, by the Eighth Judicial District Court for Clark County, Nevada ("State Court"). A true and correct copy of the Proof of Claim filed by Creditors is attached hereto as **Exhibit 1**.

5. The Judgment was entered to compensate Creditors for damages suffered by Ngan's fraudulent misrepresentations and omissions concerning his promise to invest over $50,000,000 in Creditors, so that they could capitalize on certain business opportunities. Further details of Ngan's fraudulent conduct, the business transaction at issue, and the harm caused to Creditors are set forth in the adversary complaint filed against Ngan by Creditors in the Bankruptcy Case. A true and correct copy of such adversary complaint is attached hereto as **Exhibit 2**.

6. While Ngan initially appealed the Judgment, such appeal was subsequently dismissed by the Nevada Supreme Court due to Ngan's failure to prosecute the appeal.

7. After obtaining the Judgment, Creditors sought to obtain information from Ngan necessary to collect. To that end, Creditors sought and obtained from the State Court an order conduct a judgment debtor examination of Ngan. This order required Ngan to appear for an examination on July 13, 2017, and to produce certain documents one week prior to such date.

8. Ngan failed to appear and produce documents, and, as a result, Creditors sought and obtained an Order to Show Cause Why Defendants Should Not Be Held in Contempt of Court. A true and correct copy of this order is attached hereto as **Exhibit 3**.

9. This order was entered on July 13, 2017, and set a show cause hearing for August 1, 2017. This order clearly states one of the sanctions under consideration was a bench warrant for Ngan's arrest for civil contempt.

10. This hearing did not go forward, because Ngan filed his Bankruptcy Case on July 31, 2017, in what now was clearly a transparent effort to avoid the imposition of civil contempt sanctions against him by the State Court. This is made apparent both by Ngan's conduct prior to filing for bankruptcy and his conduct during the Bankruptcy Case.

11. Ngan attempted to use his Bankruptcy Case to wrongfully avoid Creditors collection efforts, and, when that failed, Ngan stopped participating and providing information in his Bankruptcy Case. As a result, both Creditors and the Office of the United States Trustee initiated adversary proceedings objecting to Ngan's discharge of debt in bankruptcy. Ngan has defaulted in both adversary proceedings, and default judgment has been entered in the proceeding filed by the Office of the United States Trustee. Creditors are currently seeking default judgment in their adversary proceeding.

12. Creditors have been active in attempting to collect the debt represented by the Claim in the Bankruptcy Case, having requested and received dozens of orders granting examinations pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. However, it is all but certain Ngan is the one who holds the information necessary for Creditors to be paid anything on the Judgment, and, to date, Ngan continues to frustrate all attempts to obtain such information.

13. The Bankruptcy Court entered an order authorizing Creditors to take Ngan's Rule 2004 Examination on September 11, 2017. The examination was conducted on October 13, 2017. However, during this examination, Ngan refused to answer numerous questions regarding his former employers, partners, or investors, citing amorphous confidentiality agreements that prohibited him from

doing so. To date, Ngan has refused to produce even redacted versions of these supposed confidentiality agreements.

14. Ngan failed to appear at a continued examination scheduled to take place on March 28, 2018. The March 28, 2018 date was agreed to by Ngan, and he only provided notice of his decision not to appear on the evening of March 27, 2018, citing his health and his desire to have counsel. However, his previous counsel withdrew from representing Ngan effective March 8, 2018, and no replacement counsel has appeared in the Bankruptcy Case as of the filing of the instant pleading.

15. In order to address Ngan's failure to appear at the March 28 examination, the Bankruptcy Court conducted a telephonic discovery dispute hearing on April 10, 2018. Ngan was provided notice of the hearing via email, as required by the Court, but he failed to appear and participate in this hearing.

16. Following the hearing, the Bankruptcy Court entered an Order: (I) Setting Continued Rule 2004 Examination of Raymond Ngan; (II) Requiring Raymond Ngan to Answer Questions Under Oath; and (III) Setting Hearing for Raymond Ngan to Appear and Show Cause Why He Should Not Be Held in Contempt of Court ("Order to Show Cause").

17. The Order to Show Cause required Ngan to appear at a continued examination on April 26, 2018. The Order to Show Cause further required Ngan to provide complete and substantive answers to questions for which he had previously

claimed he was unable to answer due to various confidentiality agreements. Finally, the Order to Show Cause scheduled a show cause hearing on contempt for May 25, 2018, at 10:00 a.m. ("Show Cause Hearing"), making it clear that if Ngan did not comply he would be subject to civil sanctions, up to and including the issuance of a civil bench warrant.

18. Because of the seriousness of the issue, Creditors endeavored to provide the maximum amount of due process possible to Ngan. To that end, and in addition to providing notice to Ngan via mail, Creditors undertook a time consuming and expensive effort to serve Ngan at his residence.

19. This effort was greatly complicated by Ngan potentially having moved without notifying the Bankruptcy Court of his new address. Through an intensive investigation, Creditors were able to determine Ngan is perhaps living at 53 Belle Maison Avenue, Las Vegas, Nevada 89123, and he is staying with an individual named Robert "Bob" Dooley. This investigation necessitated continuing the examination to May 17, 2018, at 9:00 a.m., so that the investigation could conclude, and so personal service could be attempted.

20. On May 15, 2018, after several days of attempts to complete service, Mr. Edward Kielty of Legal Wings, Inc., a licensed civil process server, was able to complete substituted personal service, by serving Robert Dooley. Nevertheless,

Ngan failed to appear on May 17, 2018, at the continued examination. Ngan also failed to contact Creditors to attempt to reschedule his examination.

21. The Bankruptcy Court held the Show Cause Hearing as scheduled on May 25, 2018, and Ngan failed to appear as required by the Show Cause Order. A true and correct copy of the transcript of this hearing is attached hereto as **Exhibit 4**.

22. At the conclusion of the Show Cause Hearing, the Bankruptcy Court found Ngan in contempt of Court and ordered that he be arrested and held in custody until he provided testimony to Creditors, pursuant to Rule 2005 of the Federal Rules of Bankruptcy Procedure, as well as pursuant to its inherent authority under 11 U.S.C. § 105(a). A true and copy of the Contempt Order is attached hereto as **Exhibit 5**.

23. Through recent discovery efforts undertaken in the Bankruptcy Case, Creditors have learned that Ngan remains active in extremely valuable transactions, either on behalf of himself or on behalf of as of his yet unknown co-conspirators. Creditors have also learned through discovery conducted both prior to and during the Bankruptcy Case that Ngan has and continues to utilize foreign bank accounts to keep his assets remote from Creditors.

24. Ngan presents a serious flight risk, and it is imperative that he remain in custody until Creditors have had an opportunity to question him under oath, he

has produced documents as required by prior orders of the Bankruptcy Court, and until the Bankruptcy Court reviews and determines his compliance with the Contempt Order. Among other factors making it extremely unlikely Ngan will ever voluntarily appear in the Bankruptcy Court as required by the Contempt Order, the following mitigate against Ngan's release at this time:

25. Ngan testified during his October 13, 2017 Rule 2004 Examination ("October Examination") that he lived overseas for over six years, including in the countries of Dubai, Abu Dhabi, Oman, and, most recently, Bahrain. A copy of the transcript of this examination is attached hereto as **Exhibit 6**.

26. Ngan still has an identity card for the Kingdom of Bahrain that he carries with him. A true and correct copy of this identity card is attached hereto as **Exhibit 7**.

27. While this card appears to be expired, it is unknown what other travel documents Ngan may have from the Kingdom of Bahrain or any other Middle Eastern jurisdiction.

28. Despite claiming to have traveled extensively, including living in foreign countries for over six years, the passport turned over by Ngan for inspection and copying by Creditors during the October Examination has no stamps reflecting such travel, raising the possibility that Ngan possesses another United States passport, potentially under his Cambodian name, Yi Kheang Ngan.

29. Ngan was born in Cambodia, *see* Transcript, pg. 28:5, and is believed to have travelled there somewhat recently. It is possible that Ngan may have Cambodian citizenship and travel documents issued by the Cambodian government.

30. Ngan claimed in the Bankruptcy Case to be virtually penniless. Yet he was apprehended ostensibly on vacation near Yellowstone National Park, hundreds of miles from his residence in Las Vegas, Nevada. Either he has hidden assets with which he is vacationing, or he was planning to leave the country via the border with Canada.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Dated July 2, 2018.

/s/ Ryan A. Andersen<br>
Ryan A. Andersen